Morning, Your Honor. May it please the Court, my name is James Buechel, and I represent the minors. I want to suggest that the key to resolving this case is the Granite Rock case, because it's so closely on point, and I want to focus on the language in that case concerning the line between environmental regulation and land use planning. In that case, the Supreme Court assumed that land use planning was preempted, and I don't think there was any serious dispute about that at the time, nor should there be now. The question is, is Senate Bill 3, and we've now simplified down to Senate Bill 3. So the only question, all the collateral questions are gone. All that matters is the question whether Oregon did designate certain areas it calls essential indigenous anadromous salmonid habitat, and it can call these areas where there can be no motorized in-stream placer mining for precious metals. But it doesn't prohibit mining in these areas, correct? It doesn't what? Oregon does not prohibit mining in these areas. Yes, it prohibits in-stream motorized mining. Yeah, that's you and I are amiss. You try answering the question I asked. Does Oregon prohibit mining in these areas? From a practical perspective, it closes down all the gold mineral deposits in the rivers in Oregon. Some 90% of the critical gold-bearing county is so-called ESH essential. These areas were being mined for gold for years and years before motorized dredge mining, weren't they? No, I think motors were used to power the pumps frequently for hydraulic mining, and there were large-scale things where you would build entire dams. But this just prohibits dredge mining, right? It prohibits any form of in-stream motorized mining. You can't even use a hookah with a compressor to go underwater and get this gold. You're locked out of the rivers. So your argument is, effectively, that Oregon prohibits mining in these rivers. Yeah, and it's a weird discriminatory kind of mining, you know, because the environmentalists talk about effects on salmon, and they cite some Federal documents about how large-scale gravel mining might hurt salmon. That mining's not closed down. They single out the most valuable minerals, the precious minerals, and say you're not allowed to get those. The wisdom of what Oregon has done is not in front of us. The question is whether what Oregon has done is preempted by Federal law. Correct. So I don't care what studies they've relied on or whether it's weird or there's a better way to do it. The question is whether or not what they've done is preempted by Federal law. You're not claiming express preemption, are you? I am claiming express preemption. Cite the statutory provision that expressly preempts this. That would be the 30 U.S.C. Section 26 and 28, the specific grants of exclusive rights to develop these claims. The requirement that- But express preemption, as I understand it, and maybe it's a Federal statute that says the states may not regulate this area. So you're claiming conflict preemption, are you not? I am claiming both field and conflict preemption. You think that they have no authority to regulate mining in streams at all? No. They have plenty of authority under Granite Rock to have a permitting process and insist on reasonable and standards-based environmental permits. Therefore, it seems to me you must be claiming conflict. That's why I'm working down the list. It seems to me you must be claiming conflict preemption. No, because I think that in controlling uses, in zoning and controlling uses, they have trespassed upon the field of land-use planning. This is not, you know, it goes back to the quote  Land-use planning in essence chooses particular uses for the land. Environmental regulation at its core requires only that however the land is used, damage to the environment is kept within express limits. And this is why I think you're really making a conflict argument. They are not saying you can't mine. What you're saying is that by saying the ways, by prescribing the ways that mining cannot occur, they've made it impossible for me to use the land in the way the Federal government wanted me to. And that's, I think, different than field preemption. I don't think so because it's a use. It looks just like the zoning statutes where you say you can't do blasting, you can't use the bulldozers. But field preemption, as the Supreme Court defines it, is you can't legislate in this area. Right. You can't. They can. They can let you – you started out by saying they can legislate in this area by imposing environmental regulations. They just can't do them so much that they turn into land-use. That's got to be a conflict preemption. Right. We're getting to the dancing on a pin stage. Well, no, the reason it's important is I think where you've got to get to and what I'm interested in hearing is why you think this statute, in effect, prohibits mining on these – in these streams and why you think the Federal government has a statute that permits you to mine in these streams the way you want. That's the real question. Okay. What I would say is the standard for preemption is not prohibits. It is stands as an obstacle to the accomplishment of the full purposes and objectives of Congress. So let me go through. So is it the full purpose and objective of Congress that you be able to mine in these streams in the way that you believe most efficient? In the way that I believe most efficient. In other words, no, or did Congress just say to you – Yes, yes, it is the full purpose – Well, let me finish, sir. Or did Congress just say to you, look, I'm giving you a mining permit. You're going to be subject to State law when you engage in that mining activity. Our pricing of it, it takes that into account. It's very cheap. You know, you'll have to deal with them, but we haven't – nothing in our – nothing on the Federal side says you can – you're entitled to ignore State environmental laws. So why is there a conflict? Let me focus you on two statutes, 30 U.S.C. Section 612B. Can't be any material interference in mining by other uses, which this Court has interpreted to cover environmental uses. There is a carve-out for State law there, but only water law. Now, the most recent Federal thing is the Federal Land Management Policy Act, the FLPMA Act. And what the environmentalists call the heart of that act is a statement that when these things, they require their exploitation, they protected them against environmental regulation as it arose, and later they said, okay, we can regulate, but only unnecessary and undo environmental harm.    them all. It makes this case one in which, amazingly enough, environmental protection is not the highest value. What some of the law professor interveners have written is Congress has said in these narrow little places where the valuable minerals are, the highest and best use of that land is for mineral development. And that is the policy choice that Oregon is utterly trampling on. It's saying, yes, you have these little pockets of these valuable minerals, but we think there's a higher and better use for that land, and that is fish preserves. And so your only ability to – your only practical ability to exploit these deposits – and remember, this case comes to you on summary judgment with sworn affidavits saying it's impossible to get these minerals out without motors. I'm accepting that for purposes of this case. So Oregon has said, notwithstanding that it's – that, you know, we just have a different policy objective. And what makes it a land-use provision is that they have chosen a different use for this so-called fish habitat. They have said, we are – that is the designated use, and anything that would pose any risk to it has to be outlawed. So your contention – if I can rephrase it, see if you accept this – is that Oregon has effectively passed a statute that says no mining will be allowed in these places because we want to preserve the fish. That's correct. And if – and the issue of fact that is – that should be litigated is whether mining is possible in these areas, even in the absence of suction dredge? I think it's obvious from the Eighth Circuit case and all the other cases that prohibiting – you know, going back to the days of pick and shovels or whatever is an obstacle. And so I don't think you have to go back for trial. But if you want to go back for trial just to prove exactly how much of an obstacle it is, we can do that, and we can have a little more. But just a minute. Isn't it – I'm just taking his hypothetical to the fullest, and I'm surprised by your answer. It seems to me that there's a predicate question to what the magistrate judge answered. And the predicate question is, as the regulation is applied, is it so severe that it might operate as a de facto land use plan? Isn't that the question? That's the question for the obstacle – the obstacle plan. But that would be the reason we would send it back for the trial. I mean – I'm sorry. I answered wrong. No. Because it controls the use, because it zones areas and says you can't do the use there, it's land use planning. It looks like a land use planning statute. Well, that's what I thought – that's what I thought you were arguing. That's why I asked the question. So it doesn't matter, in your view, whether or not it's possible to take out minerals, because you think they've overstepped by regulating land use. I have two arrows on my bow. For that arrow, yes. Okay. For the other arrow, the other arrow – And if it's not land use, then you're saying it still conflicts because it's too restrictive. Yeah. Okay. Too restrictive? Why is that not something that is still subject to the – to the trial or to the finding of facts? That – only because I think it's sufficiently obvious and because – Because this record makes it sufficiently obvious? On this record, all I have are your client's affidavits. But the problem comes that on summary judgment, I don't know whether the court gave your affidavits and your client's affidavits the sufficiency they were allowed. But nonetheless, it seems to me that the court ought to be able to have a hearing to determine if one can, in fact, find this a de facto land use plan. Perhaps the State will simplify your argument by admitting that miners can't work six or seven feet underwater without motors, in which case – because that's where the gold is. It's down – But, see, I'm – the reason – the reason I – I'm asking the question. I don't want to put words in Judge Smith's mouth. It's this. It's that I'm having trouble figuring out if this is not a land use – if this is a land use – not a land use regulation, if it doesn't fail on the facial part, why do we then parse whether – how effective a regulation it is? In other words, if it's – if it is an environmental regulation, not a land use regulation, do we really have to then figure out whether or not another environmental regulation would make your client's job easier? Well, then – Isn't it only one question that we face? I would refer, Your Honor, to Section 1732C of FLIPMA, which talks about giving some effect, like the Forest Service regulations, to state air and water quality standards. Okay? So what Granite Rock had in mind is, here's the water quality standard. Show that you can comply with it. You get your permit. Not, we don't like that use, so the hell with you. No, and I think you're saying the same thing I am. So I'm trying to figure out whether we have two questions or only one, whether we have a factual question or a legal one. If this is a land use regulation, then we have a conflict, right? Yeah. If it's environmental regulation, we do not. No, because all of the – Isn't that what the Court has said, is that the States are entitled to enact environmental regulations, but not land use regulations? No, no. Isn't that what Granite Rock says? No. In Granite Rock, the State of California comes in and says, we don't want to prohibit, we don't want to prohibit, we don't want to prohibit, and then it says, we just want to put in reasonable permit conditions. And so the Court, in this sort of probably mistaken, enlightened approach to federalism, said, yeah, they may have some local knowledge, let's put some permit conditions in. That's completely different than saying – But I think we're saying the same thing, so I just want to make sure that we're not. What you're saying is that this so-called environmental regulation, when analyzed, is really a land use regulation, correct? No. I'm saying that if it's an environmental regulation, it does not fall within 1732c of FLTMA or the Forest Service regulations. It is not the sort of standard permit thing that is not prohibitory. So as to those provisions, then, you are making a conflict preemption argument, are you not? Yes. You're saying as to those provisions that what they're doing here, even if it's not a land use regulation, conflicts with those provisions? Yes. Tell me how it conflicts with those provisions. Because it goes back to the – And reading the provisions, I'm having trouble figuring that out. The courts' decision in Ventura County or the Hanaliah Bay case, we have authority from the Federal Government to go under there and get this stuff, okay? And the State is like, no, you can't do it. And that is a conflict. It's a simple conflict. Now, the State may say, well, we only want you to do it during these days, and nobody fought with that. It's when it became prohibitory that it mattered. And every case up until the last, like, two or three years, every case looked at it and said, is this thing prohibitory or is it regular? And it's been like that for the last two or three years, by the way. So you're not bound by what the Supreme Court of California did? No, but we are bound by our prior decisions. And the way I read Granite Rock, that's why I asked the question. It says if it's an environmental regulation, it's okay. If it's a land use regulation, it's not. Calling it one or the other doesn't end the inquiry. You have to – we have to figure out which one it is. Well, not only that, but it also said the line between them will not always be bright. And that's why I'm trying to focus you. It seems to me that under Granite Rock, there is a hypothesis-free argument, but it's the one which says one may hypothesize a state environmental regulation so severe that a particular land use would become commercially impracticable, even though the core activity described by each phase is undoubtedly different. Isn't that where you are? That is where I am. If you do not accept my assertions that when you control a use with zones, that's land use planning. Whereas if you set a turbidity standard for water and say, you can't make the water more than this much cloudy, that's an environmental standard. Now, let's say that Oregon said, you can't make the water cloudy at all. And it was a special rule for mining. You can't make the water cloudy at all. That would be the type of environmental regulation, standard-based, that would then bring us into this area of Granite Rock, where it becomes so severe that it knocks out the mining in an unreasonable way. Because again, the hallmark of Granite Rock was, we can allow some reasonable environmental regulation here. Now, Mr. Frost and his people, they sued us under the ESA. They sued us under the water. Every environmental statute has been applied to this practice. There is nothing wrong with it. It doesn't cause any coherent harm at all. It is because they could not restrict us under the standard-based. Look, as I said at the beginning, it doesn't matter. If they have a land use regulation and it's the silliest land use regulation in the world, they've got a problem. They have an environmental regulation and it's the silliest environmental regulation in the world. And it doesn't, in effect, amount to a land use regulation. Then it's okay. So the question for us is whether they've stopped you from doing what you're entitled to do under federal law. That's really the question, I think. Not whether or not science backs up what they've done. I think you're reading out two things completely out of law, which is a mistake. And one is the reasonableness requirement in Granite Rock. And the second is the whole congressional legislation over and over again saying, we've got to get the minerals out where they are. And in so doing, we want to avoid unreasonable and undo environmental effects, which is the flip side of reasonableness. So just because it's an environmental regulation doesn't mean they're home free. Because of the overriding policy that the highest and best use, the congressional purposes, get these minerals out from this little place and minimize, but don't eliminate. Every statute, it's not just FLIPMA, it's the mineral mining policy. Yeah, and look, hold on, you're over time. But all I was reacting to was your argument that this is a silly, this doesn't even do anything for the environment. Surely, surely the salmon are better off without this than they are with it. Actually, you're completely wrong, okay? Because in fact, what happens is the bottom of the- You don't want me to be completely wrong because then you may lose the case. Okay, you're not completely wrong. You're somewhat misinformed. The bottom of many of these streams become something called concretized, okay? It gets like cemented up. And the miners come through and dig it up. And all of a sudden, it becomes great spawning beds, all right? And that positive effect is recognized in the California EIR. So it oxygenates the water, it does all kinds of good things. The factual record here is quite impressive. We're not litigating here over the validity, qua non, of the, or the Oregon environmental. We're litigating here over whether it conflicts with Federal law. If you think you've got to convince me that the Oregon law is so irrational that it's unconstitutional, you've raised your burden very high. I'm not trying to win a rational basis case. Or that what you're doing is good for the salmon. You've raised your burden very high. I'm not trying to win a rational basis case. I'm just trying to apply Granite Rock in a straightforward way with Ventura County and all of the preemption decisions, that where there's this direct conflict with Federal policy. I mean, I think Your Honor wrote a decision a while back about the shark fins, remember? And the shark fins. Roberts. I never remember the ones in the history. All right. I do remember there being a lot of people interested in it. Right. And the distinction there was there was a paramount environmental objective. But there isn't a paramount environmental objective here. Congress has made this careful balancing of mineral needs and environmental objectives, and that is the balance that Oregon is trampling all over. We ask you to strike this statute down and send them back to the drawing board to do it right. Thanks. You've had more than your time. May it please the Court. Carson Whitehead for the State of Oregon. And with the Court's permission, I'd like to reserve five minutes for Pete Frost counsel for defendant intervenors. And I will. Just a minute. Before you start doing this, you can do what you want to do with your time. I'm not going to tell, but I'm not going to remind you that there's only five minutes left. Not only that, but I think you're going to find that we're going to get into this. You've seen the way that things have gone this morning. My good colleague will ask you a lot of questions. He's going to go right after you. And neither he nor I are going to be worried about whether it's you or him who's supposed to be up here. Of course, Your Honor. All right. Go ahead. Don't worry about it. But now I'll have a voice. So I'd like to jump in with where the Court was immediately. Yes, so focus on, I think, what is, I think, the central question in this case. Let's assume, because they filed affidavits that say so, that this law effectively prohibits mining in these streams. If that's so, do we have a problem? So I wouldn't push back slightly, but I think this already- Well, don't push back. Answer the question. Right. So- It may not be so, but at this stage of the litigation, I'm not sure I can conclude that it's not so. So it extinguishes the miner's ability to mine within essential, somewhat habitat that runs through their claims. Okay. So I think- If it does, does that, is there, do we have a federal conflict preemption problem because the federal government has said we're giving you these leases to- No. To, because we want you to extract valuable minerals. No, Your Honor. So- Well, but just a minute before you say no, I want you to focus on Granite Rock's language at 587, which I quoted to him to make sure I was understanding his claim. He got a little bit more carried away than that, and we'll ask you about that too, but they said right in Granite Rock that one may hypothesize a state environmental regulation so severe that a particular land use would become commercially impracticable. And based on what we have here, where the miners have expressly asserted numerous affidavits to substantiate that mining in these areas is commercially impractical. So I, going back to the purpose and intent of the mining law, I think that's the first step in the preemption analysis. And what the miners want to say is that the purpose and intent is to get the minerals out of the ground. That's the highest and best use of these lands. But I don't think you'll find that anywhere in the text of the 1872 mining law or in the subsequent enactment. So your position, and the Supreme Court just left all this stuff open in Granite Rock. It didn't decide it. Correct. Your position is that even if this law makes it, for all practical purposes, impossible to remove minerals from the streambeds, there is still no conflict with federal law. That's correct. So that, therefore, there's no fact that which, we can assume that fact to be true, that they allege, but it doesn't matter. That's correct. Tell me why. So the federal government is leasing land to people to, charging them for a And then the only thing they can use the land for under the federal lease is to extract minerals. And the state has made it impossible for them to do so. Why isn't there a conflict? Not only that, but NFMA and FLPMA, and I realize you environmentalists have your pet name for those. They require the federal government to manage the mineral resources and the surface impacts of the mining on the federal lands. I don't care which question you answer, but you see the sense of both questions, which is that assuming these facts ought to be true, why doesn't that, in effect, negate the federal law that really asks people to mine these lands in return for money? And if I may, if we're talking about the claims completely, we're not talking about the portion of the claim that's actually covered by SB3, which is just the portion of the claim that's in stream. So it doesn't, the bill only applies to in-water activities. So is one of your arguments that, look, we haven't, you can mine anywhere on the land, but you can't mine in the water? That actually is because the bill is limited. One of the changes from SB838 to SB3 is that the law now is only limited to in-stream, motorized placer mining, and there's record evidence of miners, in this case, mining the upland areas that are completely unaffected by SB3 now. So I think, but going back to- But isn't that a land use regulation of part of the land? In other words, you've said you may mine on all of the land except this part. Isn't that a land use regulation? Well, respectfully, no, Your Honor. And I still think this is, it's the, so the state purpose behind the land, behind the regulation is to protect these stream reaches for fish. I think, I think I accept that. I don't think that's, that's, nobody thinks you have a nefarious purpose. Your purposes are environmental, but even if your purposes are environmental, if you've effectively prohibited use of, some use on part of the property, does that cross over the border into land use? So if we are, if the hypothetical, just so I'm clear, is that these claims cannot be mined at all. Right, and it seems to me I have to assume that at this point of the case, because they've put in affidavits that said we're miners and we know all about this stuff. They may be dead wrong. You may have 20 witnesses that say, come on, if you're willing to get wet, you can take the stuff out. Even several, many of their affidavits don't go that far. There are some of them that do say, I can't mine my claim at all. Many of them say, I can't mine it as I'd like to. Sure, so I'm taking the record in the light most favorable to them. We're on summary judgment. I'm asking you to assume that's true. And so if we assume that. What we're saying is it's commercially impracticable, which is exactly what we're talking about as we relate to granite rock. Seems to me they're filling in the granite rock hypothetical that was left. I don't think you can say their claims don't fill that in. So you're just saying, even though their claims fill in that blank, or that part of the granite rock that was left without a decision, that we can just on summary judgment say you don't get it anyway? I think looking at what now SB3 does and that- So you're saying, assuming these facts to be true, because we only regulate the stream, it doesn't conflict. And that the state has a long history of regulation of state waters, of protecting fish and wildlife as an historic exercise of its police power. And so if we're in conflict preemption land, whether this conflicts with the purpose of the Mining Act, which I think is- So you're saying the purpose of the Mining Act isn't to allow them to extract minerals on every inch of the land. It's to allow the effective extraction of minerals. I think that's right. And I think that the mining laws since 1872 have taken express consideration of state law and require compliance with state and federal environmental laws. All you're doing is reciting to me all of the other parts of granite rock that might be said. But you're not focusing on that part of granite rock, which I read to you, which seems to me that part of granite rock, which is specifically open for them to hit, and it seems to me that these affidavits have hit it. And therefore, how do I get around not sending it back for at least a hearing to determine whether this is really, really commercially impracticable, or even if, nonetheless, you lose? That's the question. So why, assuming that these claims, as they pled, are now completely commercially impracticable under granite rock- No, not completely. Let's assume that the stream, it's commercially impracticable now to mine into the stream. Granite rock left open the question of whether or not that might be a conflict. That's right. And so let's assume that they've sufficiently established those facts. You're saying you still win as a matter of law. We can assume those facts to be true, and you still win as a matter of law. I need that argument fleshed out. OK, yes, Your Honor. I will try to answer that question. So it's assuming they're commercially impracticable, why, nevertheless- One thing you've said is because it's only part of the thing. It seems to me sort of like a takings analysis. We haven't removed all value of the property. Is there other reasons why it would, assuming these facts to be true, we wouldn't find a conflict? I think one reason is that doing a commercially impractical analysis would require an individual look at each mining claim and would essentially make preemption entirely a case-by-case basis. That would factor in the price of gold, the difficulty of getting to a particular claim, all of these economic factors that I don't think have anything to do with the core legal question of what was the purpose and intent of Congress in passing the mining law. And does Oregon's law really conflict with that intent? It would turn it real- I mean, if the price of gold- That's an answer that says, if we get to the question that the Supreme Court reserved, we should say, it doesn't matter whether it's commercially impracticable. I- You only want to go there? Right. I think that's right. I think it is Supreme Court dictated that- I understand it's dictated. But you're saying the way you'd answer that question is, even if it is commercially impracticable, it doesn't matter? That's what it seemed to me you were saying. Well, I think that- I think environmental regulation of all kinds often increases the cost of doing business. And some methods of mining, some methods of extraction, period, may become commercially impractical. That doesn't mean that- I don't think that transforms Oregon's law into- Yeah, and you may well be right. I mean, but what you're saying is the way we should answer the question that the Supreme Court posed, one can hypothesize. Because it didn't say that would be wrong. It just said one can hypothesize that we're not facing that here. Let's assume we are facing that in this case. What you say is doesn't matter. That's correct, Your Honor. But why, again? I guess I didn't get your ultimate reason. I mean, it can't be that commercially impracticability is just not a problem unless you're going to go down and have a hearing about whether it isn't or not. So- Because it isn't legally not a problem. I haven't got any case to suggest that. Right, Your Honor. But we have to decide whether it legally is a problem before we decide whether the facts matter. So we're still there. I mean, you're making an argument that says on the un- we shouldn't go back for a hearing because on the question that the Supreme Court left open, your answer is no. You have a second argument, which is we haven't made it completely commercially impracticable because they can mine elsewhere. But that one, it seems to me, turns on facts. I agree. Your legal argument is even if they showed that, it wouldn't matter, correct? That is correct, Your Honor. Do you have a case that says that? I do not, Your Honor. I do not. I think this is a- it's an open question of law that's been posed by- And your answer- and your reason is because this is plainly an environmental regulation. That's part of it, yes. And it's an exercise of the state's historic police power in this area. And if I may, I'd like to reserve a few minutes for my co-counsel, Pete Frost. Thank you. May it please the Court, Pete Frost for the interveners. To answer your question, Judge Hurwitz, related to a case that relates to this issue, it is not on point. I can see that. If there were, we'd know about it. Clouser v. Espy is a case in which the court reviewed a Forest Service decision to deny vehicular access to suction-dredged placer miners that wanted to use vehicles to access their mining claims in the Siskiyou National Forest in southwest Oregon. And the miners asserted that the Forest Service's denial of the use of vehicles would render their operations commercially invaluable. And this Court nonetheless upheld the Forest Service's restriction in that respect. Without any hearing? That's right, Your Honor. Assuming on summary judgment we assume the affidavits to be true. Yeah, that was affirming on a summary judgment decision as well. I haven't read the case. But I do, in fairness, I want to caveat that that case was about access via the National Forest lands, not the claims themselves. That's right, so we weren't dealing with somebody who had a permit to mine. That's right. But you asked the question about, you know, how does commercial impracticability fit in? And the answer in Clouser is that it can be impinged. It can be impinged a great deal. So let's assume for a moment that the federal government were only leasing the streams, the stream bed to the miners, only giving mining rights to the stream bed to the miners. There wasn't dry land involved at all. And Oregon passed a law with valid environmental purposes, which in effect made it commercially impracticable to mine. Would there be a conflict there? No, I think Oregon has the police power to regulate certain kinds of mining that it determines to be unduly destructive of public resources in the state. So I'm taking your good colleague's distinction away. He says, well, we've only regulated the stream bed and the dry land they can still mine. And I'm saying, what if only the stream bed were the subject of the federal mining permit? And you say, it doesn't matter. It ultimately doesn't, but the facts in this case, frankly, 80% of the rivers and streams in Oregon are open to suction dredge mining subject to permit conditions. The Oregon legislature has made a decision that in 20% of its rivers and streams, and frankly, these flow not only through federal lands, they flow through state lands and private lands. The reason that I ask these questions is that if in fact it depends on the facts, then it seems to me summary judgment is not an appropriate mechanism. If it only depends on the law, then summary judgment is an appropriate mechanism. It may well be that some of your colleagues' clients have leases that are in areas where permits are available and all these things can occur, but some of them may not. And if you're asking us to sort out the facts on summary judgment, that's a problem. If you're asking us to say it doesn't matter, then we can answer that yes or no. And that's why I want to focus in on that issue. May I answer your question? Yes. It doesn't matter. I think you could, hypothetically, you could probably find a conflict between a state environmental regulation and a minor somewhere in this state that that minor would fill out a declaration and say, this is rendering my claim commercially impracticable. If it drills down to that level, I don't think preemption does. I don't think it does. And can you do a one-sentence answer of why it doesn't? Because the state can regulate destructive uses under its police powers for these lands. But that seems to go directly, just to be fair, seems to go directly contrary to the exact situation that the Supreme Court left open, saying that even though it's a state environmental regulation, if it's so severe that it would become commercially impracticable, you're out. Right. I didn't say you're out. It just said we haven't decided. I understand. I mean, it implied to me you're out. And I think if you had a statewide regulation banning mining throughout federal lands in Oregon, you would have such a kind of restriction. You don't have this here. Even if passed for environmental purposes? Even if the state of Oregon said, look, mining inevitably involves, I don't know, dredging or sludging or whatever, and it always has some environmental impact. I think there could be an overbroad state regulation. This is narrowly focused on essential salmonid habitat. And my last point, if I may, Judge Smith, I am over. You're over. I'm partly responsible. All right. I mean, I was going to say, you're over. The place where we... Sum up quickly. We depart a bit from our colleagues. The federal purposes and objectives are not limited to the mining laws. They include the Endangered Species Act and the Clean Water Act. Every one of the claims in this case, except for one on one creek, are in designated critical habitat for wild salmon and steelhead trout that are listed as threatened with extinction. So there are other federal purposes that are being advanced by the state's principled regulation of this form of mining in these discrete areas. Thank you. Thank you, Your Honor. Give you a minute. I'll let him go over. Thank you, Your Honor. But calm down and talk to us. You don't have to yell at us. You don't have to do it. Just talk to us. I just want to say, we would favor, rather than a case by case result and a remand, we would favor that Your Honors look to the character of the law and whether it is prohibitory or regulatory. Whether it is consistent with affording miners an opportunity to get a permit under a standards-based system or whether it just flatly says no. Because we think under the case law, just flatly saying no transgresses Granite Rock and it transgresses all the federal purposes. With respect to his factual contentions, yes, there are streams and there are other claims and there are other parts of other claims, but it's about where the gold is. And where the gold is is where they have regulated us out. And the reason the claims don't match the streams perfectly and there's some little pieces that stick out is because the mining laws require you to describe the claim by conforming to the pattern of rectangular surveys. And in the record, you will find some nice little maps. For example, the Frost Declaration, Exhibit C, page 66. You will see that here's the river stream and then we have these little pieces sticking out and the gold just isn't there. So that's a response to the first argument that the other side made, which is that we haven't prohibited you from mining the land. And you say we've provided evidence that the only valuable place on our permit is in the stream. So then we get to the ultimate question, which is that let's assume they've done that. Can they do it? Yeah, and we say no because it's a prohibition. And you can decide that the character of the law is sufficiently offensive to the Congress struck by balance, which requires some means of determining whether the degradation, the alleged degradation, is unnecessary or undue in light of the principle and highest and best use of these little places of getting the minerals out. Thank you. Thank you. Appreciate it. This case, 1635262, Omaka versus State of Oregon, is submitted. And thank you all for your argument. We are adjourned.
judges: Fisher, N.R. Smith, Hurwitz